

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: **CYNTHIA ELIZABETH BLACKWELL,** Debtor. | BAP No. WW-24-1087-SGC |
| | Bk. No. 2:22-bk-10102-CMA |
| **HIDALMA PORCEL,** Appellant, v. | Adv. No. 2:23-ap-01071-CMA |
| | **MEMORANDUM**[*] |
| **CYNTHIA ELIZABETH BLACKWELL,** Appellee. | |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Christopher M. Alston, Chief Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and CORBIT, Bankruptcy Judges.

Memorandum by Judge Spraker.

Dissent by Judge Gan.

## INTRODUCTION

In 2020, Cynthia Elizabeth Blackwell ("Debtor") was involved in a motor vehicle accident that caused the death of Juan Porcel, Jr. Two years later, Mr. Porcel's mother and representative of his estate, Hidalma Porcel,

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

filed a state court complaint against Debtor and others. When she learned that Debtor had filed a chapter 7[1] petition and received a discharge prior to the state court case, Mrs. Porcel filed an adversary complaint to "determine that regardless of the discharge, Porcel may pursue Blackwell in the currently pending state court action however, recovery from Blackwell [will] be limited to the amount of insurance proceeds."

The bankruptcy court granted summary judgment in favor of Debtor. It held that continuing the litigation would violate § 524(a), and it lacked authority to modify the discharge injunction. We agree that bankruptcy courts lack the authority to modify the discharge injunction. We disagree, however, that Mrs. Porcel's action against Debtor violated the discharge injunction as she made clear that the action and any judgment was being pursued not to recover from her personally but from her insurer and to establish joint and several liability of the nondebtor defendants under Washington law. For this reason, we REVERSE AND REMAND, for entry of summary judgment in Mrs. Porcel's favor.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS[2]

In February 2020, while driving near Sequim, Washington, Debtor collided into the rear end of a stopped vehicle driven by Milton Garrett while he waited to make a left-hand turn. The collision pushed Mr. Garrett's vehicle into the oncoming lane of traffic, where it was struck by a vehicle, killing Juan Porcel, Jr. who was a passenger in Mr. Garrett's vehicle. After her son's death, the state court appointed Mrs. Porcel as administrator of his estate.

Debtor filed a chapter 7 petition in January 2022. The trustee determined there were no assets to administer, and Debtor received a discharge in April 2022. Debtor did not schedule Mrs. Porcel as a creditor, but she listed Juan Porcel, Jr. at his prior address. Mrs. Porcel maintains that she did not have notice of the bankruptcy filing.

In July 2022, Mrs. Porcel filed a complaint in state court against Debtor, Mr. Garrett, and the State of Washington, for negligence and statutory wrongful death claims. Debtor's insurance counsel notified Mrs. Porcel of the bankruptcy discharge, and although the carrier tendered the policy limits of $50,000, Mrs. Porcel declined the offer and sought to continue her suit against Debtor.

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Mrs. Porcel filed a motion for relief from the automatic stay or discharge in the closed bankruptcy case. The bankruptcy court denied the motion because the automatic stay had terminated and Mrs. Porcel did not identify any authority for relief from the discharge injunction. Mrs. Porcel then attempted to reopen the case to obtain an order authorizing her to proceed against Debtor in state court to the extent of the insurance proceeds. The bankruptcy court denied the motion as futile because it lacked authority to modify the discharge injunction and the declaratory judgment sought by Mrs. Porcel required an adversary proceeding.

In October 2023, Mrs. Porcel filed an adversary complaint seeking an order that: (1) her claim against Debtor was not discharged; and (2) regardless of the discharge, she could pursue the state court action to obtain a judgment against Debtor, but any recovery as against Debtor would be limited to the amount of her insurance proceeds.

The same day, Debtor filed a motion for summary judgment in the state court case. She argued that her bankruptcy discharge precluded Mrs. Porcel's suit against her and the state court lacked jurisdiction to alter or modify the discharge injunction. In December 2023, the state court denied summary judgment and held that Mrs. Porcel was "allowed to continue her current litigation against [Debtor] solely to recover [Debtor's] $50,000 of insurance proceeds without the Bankruptcy Court's approval."

Debtor then filed a motion to dismiss the adversary complaint. She argued that the discharge injunction could not be modified under the

4

holding of *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546 (9th Cir. BAP 2002). In response, Mrs. Porcel argued the discharge injunction did not apply to her action against Debtor, and she questioned whether her claim was discharged because she did not have notice of the bankruptcy filing. She also maintained that if her claim was discharged, the bankruptcy court had authority to enter equitable relief by modifying the discharge injunction.

At the hearing, Mrs. Porcel abandoned her cause of action that her claim was not discharged. The bankruptcy court concluded that it had jurisdiction to determine the extent of the discharge injunction, but it suggested that the applicability of the discharge injunction was an issue properly resolved by summary judgment. The bankruptcy court entered an order denying the motion to dismiss. However, based on Mrs. Porcel's stated intent not to pursue her exception to discharge claim for relief, the court dismissed that claim without prejudice.

In March 2023, Mrs. Porcel filed a motion for summary judgment, arguing that she should be allowed to proceed against Debtor in the state court action to ultimately pursue the insurance proceeds and her third-party claims. She asserted that Debtor must remain a party in the state court case to allow Mrs. Porcel to establish joint and several liability against the State of Washington. Essentially, she argued that the court should determine that either: (1) the discharge injunction did not preclude the

specific relief she sought against Debtor; or (2) the discharge injunction should be modified to allow her to proceed against Debtor.

Debtor filed an opposition and cross-motion for summary judgment. She acknowledged that the bankruptcy court can make determinations regarding the scope of the discharge injunction, but she argued the court cannot modify the injunction to force Debtor's participation as a party in the state court action. According to Debtor, Mrs. Porcel was merely rehashing arguments, previously rejected by the bankruptcy court, that she should be allowed to proceed against Debtor regardless of the discharge injunction.

The bankruptcy court denied Mrs. Porcel's motion and granted summary judgment in favor of Debtor. The bankruptcy court rejected Mrs. Porcel's argument that the discharge injunction did not apply to her efforts to obtain a large money judgment holding Debtor jointly and severally liable but limiting recovery against her only to insurance proceeds. The court found this argument illogical and contrary to state law. It explained that continuing the state court litigation against Debtor to establish joint and several liability would violate the discharge injunction because Washington law clearly states that "defendants found jointly and severally liable are liable up to the full amount of the judgment." According to the bankruptcy court, "the scope of the discharge injunction plainly encompasses the relief sought by Porcel . . . and precludes her from pursuing her claims against [Debtor] in the state court action." The

bankruptcy court further held that it lacked authority to modify the discharge injunction under the holding of *Munoz*.

As to the insurance proceeds, the bankruptcy court noted that the state court had authorized Mrs. Porcel to continue the litigation against Debtor solely to recover the insurance proceeds. It also noted that the insurance company had previously tendered the policy limits to Mrs. Porcel, but she had rejected the tender. The bankruptcy court, however, declined to differentiate between Mrs. Porcel's claim against Debtor to recover from the insurer and her efforts to recover from the other named defendants. Rather, the court saw all aspects of the continuation of the state court action against Debtor as being at odds with the discharge injunction. As the court reasoned, Mrs. Porcel "wants permission to collect $50,000 from Blackwell on a claim that was undoubtedly discharged. It matters not that a third-party (Blackwell's insurance company) may step up and pay the $50,000." Therefore, the bankruptcy court held that because Mrs. Porcel's action would result in a judgment against Debtor, it violated the discharge injunction even if recovery were limited to insurance proceeds. However, based on the prior tender of the insurance proceeds, the bankruptcy court concluded that while the discharge injunction prohibited the continuation of the state court action against Debtor, it

would not prevent Mrs. Porcel from accepting the insurer's tender of insurance proceeds.[3]

The bankruptcy court entered summary judgment, dismissing the adversary complaint with prejudice. Mrs. Porcel timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157.[4] We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it denied Mrs. Porcel's motion for summary judgment and instead granted summary judgment in favor of Debtor?

---

[3] Evidently, the bankruptcy court assumed that the insurer's policy limits tender would still be available to Mrs. Porcel despite the court's summary judgment ruling prohibiting any further action against Debtor. On this record, it is unclear why the court made this assumption given that the court left Mrs. Porcel without any apparent means of establishing Debtor's underlying liability for purposes of collecting against the insurer.

[4] The bankruptcy court recognized that the state court had concurrent jurisdiction to determine questions surrounding Debtor's bankruptcy discharge but properly concluded that it was not bound by its decision. This is because "the state court had jurisdiction to construe the bankruptcy discharge correctly, but not incorrectly. An incorrect construction would be void ab initio" *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 784 (9th Cir. BAP 1999); *see also Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 181 (9th Cir. BAP 2021), *aff'd*, 2021 WL 5542226 (9th Cir. Nov. 26, 2021). Accordingly, the bankruptcy court had jurisdiction to determine the scope of the discharge notwithstanding the state court's decision.

8

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant or denial of summary judgment. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Mrs. Porcel argues that the bankruptcy court erroneously concluded that the discharge injunction barred her state law claims against Debtor. She contends that the discharge injunction does not enjoin her action against Debtor, but if it does, she contends the bankruptcy court should have modified the injunction to permit the claims against Debtor to proceed.

We are bound by our prior precedent holding that bankruptcy courts cannot modify the statutory discharge injunction imposed by § 524(a)(2). But our precedent also establishes that not every post-discharge action against a debtor violates this injunction. Nor is every post-discharge judgment against a debtor void under § 524(a)(1). Admittedly, such nuance at first blush seems counterintuitive when considered against the broad language of § 524(a), but such nuance is inescapable given § 524(e)'s directive that a debtor's discharge does not impact the liability of third parties even if it is premised on a debt that has been discharged as to the debtor. This is because § 524(a) does not eliminate the debtor's discharged

9

debt as if it never existed; it only enjoins creditors' efforts to recover that debt from the debtor personally. The question under § 524(a) therefore becomes not simply whether the creditor seeks a judgment against the discharged debtor, but whether she seeks that judgment as part of an effort to recover against the debtor personally. Sections 524(a)(1) and (2) only preclude the latter.

## A.    Legal standards governing summary judgment

Civil Rule 56(a), made applicable here by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Fresno Motors,* LLC, 771 F.3d at 1125 (citing *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

When the material facts are not in dispute, our only function is to determine whether the bankruptcy court correctly applied the law. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

## B.    The discharge injunction cannot be modified.

Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." Similarly, the discharge "voids any judgment at

10

any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor" with respect to a discharged debt. § 524(a)(1). Importantly, the discharge injunction protects only the debtor. Subject to an exception not applicable here, the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." § 524(e).

Mrs. Porcel continues to press her argument that the bankruptcy court erred by failing to modify the discharge injunction to permit her state court action. Confusingly, she acknowledges that *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 550 (9th Cir. BAP 2002), holds that bankruptcy courts lack authority to modify the statutory discharge injunction imposed by § 524(a)(2). Nonetheless, she contends that the discharge injunction should be modified and cites several cases from other circuits and commentary to support her argument. *Munoz* flatly rejected any ability to modify the statutory injunction, noting that it is "set in statutory concrete" and may not be modified by the bankruptcy court. *Id.* We are bound by our prior precedent. *See Ball v. Payco-Gen. Am. Credits, Inc. (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995). Accordingly, the bankruptcy court did not err in its ruling that it lacked authority to modify the discharge injunction.

## C. Mrs. Porcel's action against Debtor did not violate the discharge injunction.

Mrs. Porcel also argues that her state court action against Debtor does not violate the discharge injunction because she does not seek to collect, or

11

use it to collect, from Debtor personally. The bankruptcy court rejected this argument because Mrs. Porcel **sought** a judgment against Debtor for her discharged debt. This question is also controlled by *Munoz.*

In *Munoz*, the creditors brought a post-discharge action to obtain an "award" or "judgment" from the Workers' Compensation Appeals Board ("WCAB") against the discharged debtor. An unpaid judgment against the debtor was a prerequisite to obtaining payment ultimately from the Uninsured Employers Fund ("UEF") if the judgment remained unpaid. 287 B.R. at 549, 555. Examining whether § 524(a)(2) barred the action, *Munoz* explained that the discharge injunction enjoins only those actions "to collect, recover or offset any [discharged] debt **as a personal liability of the debtor**." *Id.* at 555 (emphasis in original).

Though the creditors plainly sought a judgment against the debtor in *Munoz,* the action did not violate the discharge injunction because the creditors did not seek to collect or recover the resulting judgment from the discharged debtor. *Id.* at 554-55. Instead, they merely sought the judgment against the debtor so that they could get paid by the nondebtor UEF—after the debtor failed to pay the judgment. In its decision, *Munoz* emphasized that § 524(e) precluded the debtor's discharge from affecting the liability of any nondebtor entity. This limitation necessarily constrained the furthest reach of the discharge injunction to bar every action against a discharged debtor. *Id.* at 555. Because § 524(a) cannot shield nondebtors from liability, *Munoz* concluded that "§ 524(e) compels us to construe § 524(a)(2) such that

the discharge injunction is not a bar to completing the WCAB proceeding."

*Id.* at 555.

Similarly, § 524(a)(1) did not void the post-discharge judgment to the extent that it was used to pass through the discharged liability to the UEF.[5] *Id.* at 556. While § 524(a)(1) would void any attempt to use the judgment to collect from the debtor personally, *Munoz* explained:

> [The] self-executing feature of § 524(a)(1), which voids judgments to the extent they offend, complements parallel language of the § 524(a)(2) discharge injunction. **It affords latitude to construe the injunction so as to permit nonbankruptcy actions to proceed post-discharge. It acts as a safety net by assuring that any judgment determining a debtor's personal liability on a discharged debt cannot be enforced to that extent and can be collaterally attacked in bankruptcy court.**

287 B.R. at 556 (emphasis added).

It is this self-executing nature of § 524(a)(1) that was "central to a statutory structure in which Congress was expressly making it possible for

---

[5] We are aware of broad statements concerning the scope and effect of § 524(a)(1) in general. *In re Mellem*, 625 B.R. at 181-82 ("The discharge voids all judgments at any time obtained—i.e., past, present, and future—to the extent that the judgment is a determination of the personal liability of the debtor with respect to a discharged debt." (cleaned up)); *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 171 (9th Cir. BAP 2005) ("Once the discharge was entered . . . , any judgment that [the creditor] obtained on the discharged debt would automatically be rendered 'void' by § 524(a)(1), and [the creditor] itself was subject to the discharge injunction imposed by § 524(a)(2). Thus, the . . . judgment obtained [post-discharge] was 'void' the instant it was entered."). This general rule presupposes the judgments are being used to collect against the discharged debtor rather than nondebtor third parties.

a debtor to ignore a creditor's subsequent action on a discharged debt in a nonbankruptcy court." *Id.* Thus, working together with the discharge injunction, § 524(a)(1) serves to void any judgments only "to the extent that such judgments are determinations of the personal liability of the debtor." *Id.* For these reasons, the creditors in *Munoz* were able to sue and obtain a judgment against the debtor post-discharge to impose liability on the UEF.

*Munoz* shows that § 524(a)(2) does not enjoin every action against a discharged debtor. Nor does § 524(a)(1) void a judgment against a discharged debtor to the extent that it is not directed at collecting that debt personally from the debtor. Admittedly, this appears counterintuitive upon initial consideration; any judgment creditor who is granted a post-discharge judgment against the debtor conceivably might misuse it by improperly attempting to enforce it against that debtor. Indeed, this doubtlessly is the motive of some creditors who pursue post-discharge actions against debtors. But it is the attempt to collect a discharged debt from the debtor personally that triggers § 524(a)(1) and (2). These provisions work together to bar such efforts. Under *Munoz*, § 524(e) necessarily requires a more nuanced and thorough discharge analysis than merely saying that the discharge "extinguished" all subject debts. When, as here, a court is asked to declare whether an action against a discharged debtor would violate the discharge injunction, the purpose of that action is critical. Section 524(a) simply does not enjoin a post-discharge action or void a resulting judgment against a debtor used as a pass-through to

14

impose liability on nondebtors. *Id.* at 555; *see also Slali v. Ruiz (In re Slali)*, 282 B.R. 225, 229 (C.D. Cal. 2002) ("It is well established that [§ 524(e)] permits a creditor to bring or continue an action directly against the debtor to establish the debtor's liability when establishing that liability is a prerequisite to recovery from another entity."); *Patronite v. Beeney (In re Beeney)*, 142 B.R. 360, 363 (9th Cir. BAP 1992) (action against discharged debtor needed to recover against debtor's insurer did not violate the discharge injunction).

Mrs. Porcel seeks to obtain a judgment against Debtor not to collect or recover from her, but to collect from her insurer and impose joint and several liability on Debtor's co-defendants—if they are found liable. She explains that under Washington law, it is advantageous to sue multiple defendants for the wrongful death of her son even if she cannot enforce any resulting judgment against Debtor. Under Revised Code of Washington ("RCW") 4.22.070(1), Washington requires the trier of fact to allocate fault as "to every entity which caused the claimant's damages," regardless of whether they are named as defendants. With an exception not relevant here, this includes "entities immune from liability." *Id.* Generally, Washington law imposes several liability on joint defendants. *Id.* This means that "when multiple tortfeasors cause a plaintiff's injuries, each tortfeasor is liable only for damages corresponding to its proportionate share of fault as determined by the trier of fact." *Barton v. State, Dep't of Transp.*, 308 P.3d 597, 602 (Wash. 2013) (en banc); *Kottler v. Washington*, 963

15

P.2d 834, 839 (Wash. 1998) (en banc) ("several liability is now intended to be the general rule" (citation omitted)). While fault must generally be allocated regardless of whether one was named as a defendant, "[j]udgment shall be entered against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages." *Kottler*, 963 P.2d at 838 n.6 (quoting RCW 4.22.070(1)).

Though several liability among tortfeasors is the general rule in Washington, two statutory exceptions exist. Relevant here, under RCW 4.22.070(1)(b) defendants will be jointly and severally liable if the claimant was not at fault and judgment is entered against more than one defendant. If applicable, "tortfeasors against whom judgment is entered are jointly and severally liable for the sum of their proportionate shares of the plaintiff's damages." *Barton*, 308 P.3d at 602-03 (citing RCW 4.22.070(1)(b)). The "modified joint and several liability" provided for under RCW 4.22.070(1)(b) differs from traditional joint and several liability in three respects: (1) it arises only if the plaintiff has no fault; (2) "parties held jointly and severally liable will be jointly and severally liable only for the sum of their proportionate liability;" and (3) only "the defendants against whom judgment is entered" will be jointly and severally liable. *Kottler*, 963 P.2d at 840 (citations omitted).

Mrs. Porcel contends that this exception applies to her state court lawsuit. She has acknowledged that she cannot collect from Debtor personally any judgment she may obtain against her. Still, she argues that the action and resulting judgment against her are needed to meet the requirements of RCW 4.22.070(1)(b) to impose joint and several liability against other defendants found liable. Implicit in Mrs. Porcel's argument is that, based on her theory of the case, obtaining any judgment against Debtor and either, or both, of the nondebtor defendants would likely result in a larger recovery under joint and several liability than any judgment without Debtor. This follows from Washington's limitation of joint and several liability under RCW 4.22.070(1)(b) to the combined proportionate share of those defendants against whom judgment is entered.

This exact dilemma confronted the plaintiff in *Anderson v. City of Seattle*, 873 P.2d 489 (Wash. 1994) (en banc). There, a driver struck and killed a young boy while he and his foster sister were attempting to cross a street. The driver subsequently filed bankruptcy, listed the child's mother as a creditor, and received a discharge. The child's mother later sued the debtor, her husband, and the City of Seattle. *Id.* at 490. The parties dismissed the debtor based on her discharge and dismissed her husband as well. *Id.* At trial, the jury apportioned fault only between the boy's foster sister, who was not a named defendant, and the City of Seattle. The jury held that the City was 1% at fault and the sister had no fault. *Id.*

17

On appeal, the plaintiff argued that her deceased son was without fault, so RCW 4.22.070(1)(b) applied and provided for joint and several liability. The Supreme Court of Washington disagreed, finding that "[j]oint and several liability is not available to [plaintiff] under the facts of this case." *Id.* at 491. The Court explained that because the plaintiff dismissed the debtor and her husband, RCW 4.22.070(1)(b) could not apply:

> Inherent in the language of subsection (1)(b) is the prerequisite that two or more defendants have a final judgment entered against them. If a final judgment is entered against only one defendant, that defendant is only severally liable for its proportionate share of fault regardless of whether fault is apportioned among other entities. Here, the trial court entered judgment against one defendant, the City. Consequently, the City is severally liable.

> In summary, a defendant against whom judgment is entered, as that term is used in RCW 4.22.070(1)(b), must be a named defendant in the case when the court enters its final judgment. Because Wilson was not a named defendant when the court entered its final judgment, Wilson cannot under any reasonable interpretation of RCW 4.22.070(1)(b) be a defendant against whom judgment is entered.

*Id.* at 492.

Mrs. Porcel is attempting to circumnavigate the discharge injunction and the dilemma the plaintiff in *Anderson* was unable to successfully address. In *Anderson* the Washington Supreme Court observed that based on the discharge injunction resulting from the bankruptcy, "[t]he trial court correctly accepted the agreed order dismissing the Wilsons from the

18

lawsuit." *Id*. at 491 n.2. The facts giving rise to the dismissal of the creditor's action in *Anderson* are unclear and it was decided prior to *Munoz,* but the reference suggests a potential misapplication of the discharge injunction. A "discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability." *RS Air, LLC v. NetJets Aviation, Inc. (In re RS Air, LLC)*, 651 B.R. 538, 545 (9th Cir. BAP 2023) (quoting *Blixseth v. Credit Suisse*, 961 F. 3d 1074, 1082 (9th Cir. 2020)); *accord*, *Star Phoenix Mining Co. v. W. One Bank*, 147 F.3d 1145, 1147 n.2 (9th Cir. 1998). For this reason, a bankruptcy discharge does not confer immunity from liability on a debtor as that term is used in RCW 4.22.070(1). Immunity from liability precludes any action or responsibility for the underlying debt itself. The Cambridge Dictionary Online defines immunity as "a situation in which you are protected . . . from legal action." https://dictionary.cambridge.org/us/dictionary/english/immunity (last visited June 13, 2025); *see also Boudreaux v. Weyerhaeuser Co.*, 448 P.3d 121, 130–32 (Wash. App. 2019) (explaining that statutory employer immunity under Washington's Industrial Insurance Act protected employers from both liability and civil suits by their employees arising from most workplace injuries). Thus, one that is immune cannot be held liable, and under RCW 4.22.070(1) judgment cannot be entered against a person with immunity.

A bankruptcy discharge does not confer immunity on a debtor. Because the bankruptcy merely discharges a debtor from personal liability,

19

a discharged liability still exists and can be collected from other entities without violating § 524(a). *See* § 524(e); *In re RS Air, LLC*, 651 B.R. at 545-46. This is why *Munoz* permitted creditors to sue and obtain judgment against the debtor after entry of the discharge so long as they did not seek to recover personally from the discharged debtor. To hold otherwise would violate § 524(e).

Both the parties and the bankruptcy court have cited *In re Slali* in support of their positions. *Munoz* cited *Slali* as an example of a court construing the discharge injunction through the prism of modification. In *Slali*, the United States District Court for the Central District of California ("District Court") reviewed decisions from the bankruptcy court to reopen two chapter 7 cases and grant relief to permit a creditor to proceed before the WCAB after entry of discharges in both cases, as a prerequisite to recovering on the debtors' liability from the UEF if the judgment went unpaid. 282 B.R. at 227. Though the court was "inclined to agree that the discharge injunction does not bar [the creditor] from litigating his claim before the WCAB," it held that the creditor's request for approval was a wise step to clarify whether the discharge injunction applied. *Id.* at 230.

The *Slali* court analyzed the requested modification of the injunction under a test articulated in *In re Czuba*, 146 B.R. 225 (Bankr. D. Minn. 1992). The bankruptcy court in *Czuba* held that it could modify the discharge injunction if: (1) the debtor is a necessary party in the pending litigation; (2) pursuit of the litigation will not impose a financial hardship on the

debtor in derogation of the sweeping effect of the discharge; and (3) the parties agree that the modification is limited to establishing liability and does not allow pursuit of a judgment against the discharged debtor. 146 B.R. at 228-29. The *Slali* court recognized that it was necessary for the creditor to obtain a judgment against the debtors to ultimately recover against the UEF. 282 B.R. at 231 ("if Ruiz cannot proceed against the debtors before the WCAB, he will have no remedy for whatever work-related injuries he has suffered."). Similarly, the court found that the post-discharge action against the debtors would not impose a financial hardship because the creditor could not enforce any judgment against them. *Id.* As to the creditor's pursuit of the debtors, the bankruptcy court had included language in the order expressly stating that no recovery against the debtor was permitted absent further court order. *Id*. at 232.

Though judgment would be entered against the debtor, *Slali* found that the *Czuba* considerations supported the bankruptcy court's decision to "modify" the discharge injunction to permit the creditor's action to proceed. *Id.* at 230-232. In *Munoz* we agreed with the result in *Slali*, but not its reasoning. 287 B.R. 554. Rather, we noted that "[t]he *Slali* court reasoned that the § 524(a)(2) discharge injunctions probably did not bar the WCAB action from proceeding in light of § 524(e) . . . but that it nevertheless was not an abuse of discretion for the court to modify the injunction." *Id.* Because there is no authority to modify the injunction imposed under § 524(a)(2), we read *Slali* as holding that the post-discharge action did not

21

violate the injunction. *Id.* Attempting to reconcile *Slali*, we suggested that the "*Czuba* test" constituted "a sound method of construing § 524(a)(2) to determine whether an action is being pursued to 'collect, recover, or offset any [discharged] debt **as a personal liability of the debtor**' rather than a method of justifying a modification of the injunction." *Id.* (emphasis in original).

Debtor interprets *Czuba* as imposing a required test. But we do not read *Munoz* to require rigid application of the *Czuba* factors to ascertain the application of § 524(a) to a specific case. Rather, *Munoz* merely states that these factors are a "sound method" to evaluate the ultimate question of whether the challenged action is an attempt to collect the discharged debt as a personal liability of the debtor.[6] Interestingly, *Munoz* did not apply the

---

[6] Debtor has argued that the *Czuba* factors do not support modification of the discharge injunction. But modification is not the question before us, and we have explained that any resulting judgment may be used to collect the underlying debt against sources other than a discharged debtor. Moreover, the *Czuba* factors are not inconsistent with our interpretation of the scope of the bankruptcy discharge. Debtor points out that the state court specifically declined to find that Debtor was a necessary party to preserve Mrs. Porcel's ability to impose joint and several liability on the named defendants. Based on RCW 4.22.070(1), Debtor is not strictly necessary under the rules of procedure to maintain her claims against the other defendants, or even to impose joint and several liability on Mr. Garrett and the State of Washington for their combined proportionate fault. But Debtor is certainly necessary from Mrs. Porcel's perspective to provide the largest potential recovery based on joint and several liability by rendering either Mr. Garrett, the State of Washington, or both, jointly and severally liable for Debtor's fault if the appropriate judgment is entered. Similarly, Debtor makes a passing reference to her financial hardship if the action proceeds, whereas Mrs. Porcel does not address the issue. The relevance of this consideration is questionable. Bankruptcy provides a discharge of personal liability to assist a debtor's fresh start. It does not remove all consequences of the debtor's prepetition actions. Under RCW 4.22.070(1), the

*Czuba* factors in any detail. Instead, it focused on the possibility that the decision of the WCAB could create a nondischargeable debt if the UEF was required to pay the creditors. Ultimately, we agreed with the conclusion reached in *Slali* that a debtor "cannot object that the court should protect them from the hardship of paying a debt which the law makes nondischargeable."[7] *Id.* at 556 (quoting *Slali*, 282 B.R. at 231).

We see no meaningful difference between the action in *Munoz* and Mrs. Porcel's state court lawsuit. Mrs. Porcel is clear that she did not bring the suit to recover against Debtor but instead against her nondebtor co-defendants and insurance.[8] She has presented a valid litigation purpose for her action against Debtor; she seeks to use any judgment entered against

---

Washington court must allocate Debtor's fault regardless of whether she remains a defendant. Presumably, this will require her participation in the lawsuit whether she is a defendant or witness. Her bankruptcy discharge relieves her of any personal liability for any resulting judgment, thereby negating any personal financial stake she otherwise might have in the action. Finally, as in *Munoz,* the judgment entered can simply state that there can be no recovery of any judgment to be entered against Debtor personally.

[7] The dissent raises a concern that if the discharge injunction does not enjoin Mrs. Porcel's action it might create a right of contribution that may be nondischargeable. We express no opinion on the dischargeability of any such claim. But we faced a similar situation in *Munoz* and concluded, "the potential for a nondischargeable debt to result from the [post-discharge action] does not make the § 524(a)(2) discharge applicable." 287 B.R. at 555.

[8] Nothing in *Munoz, Slali,* or *Beeney* suggests Mrs. Porcel must affirmatively release or settle her claims against Debtor before attempting to pursue her action against Debtor in an effort to **collect** from nondebtors. To the contrary, those cases permitted the actions to proceed to judgment against the discharged debtors to determine their underlying liability in furtherance of recovery against nondebtors consistent with § 524(e).

Debtor to impose joint and several liability on one or both of the other defendants if judgment is entered against them. True, Mrs. Porcel could maintain her action against both of the nondebtor defendants in the hope of imposing joint and several liability for their combined proportionate fault. But that is not the proper scope for our examination. Mrs. Porcel has explained why she seeks to sue Debtor on a discharged debt. Her effort to obtain the maximum recovery against the nondebtor defendants under Washington law based on Debtor's liability for that debt does not offend § 524(a)(1) or (2).

There may be instances where a creditor's pursuit of a post-discharge action and judgment raise questions as to whether the creditor is actually attempting to recover a discharged debt from the debtor personally. In such instances, resort to the *Czuba* factors may be helpful, but that is not this case. The record is clear that though Mrs. Porcel has sued Debtor on a discharged debt, she does not seek to recover that debt from her. She has provided a legitimate reason to do so in seeking to maximize her recovery as provided by Washington law. For these reasons, her state court action against Debtor does not violate § 524(a)(1) or (2).

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's grant of summary judgment in favor of Debtor and REMAND, for entry of summary judgment in Mrs. Porcel's favor.

Dissent begins on next page.

24

GAN, Bankruptcy Judge, dissenting.

To preserve joint and several liability against the State of Washington, Mrs. Porcel necessarily must obtain a judgment against Debtor establishing her personal liability. This clearly violates § 524(a)(2), and any such judgment automatically will be void under § 524(a)(1). The majority assumes that Mrs. Porcel's promise not to seek recovery from Debtor removes her lawsuit from the ambit of the discharge injunction, and it erroneously compares this case to those where a plaintiff's action is limited to recovery against third parties.

But Mrs. Porcel has not filed a binding covenant not to enforce the judgment against Debtor, and she cannot do so if she intends to establish joint and several liability. Under Washington law, such an agreement must be approved by the state court, and because it must constitute a complete resolution of all claims against Debtor to comport with the discharge injunction, it would operate as a release. *See Barton*, 308 P.3d at 606-608.

Pursuant to RCW 4.22.070(1), Mrs. Porcel cannot obtain a judgment against a released defendant, and thus, she cannot establish joint and several liability against Debtor. Because the relief Mrs. Porcel seeks requires a personal judgment against Debtor, and she cannot effectively release Debtor from that personal liability, her lawsuit is clearly enjoined by § 524(a). I dissent.

1

## A.    The discharge injunction

We held in *Munoz* that the discharge injunction is set in "statutory concrete," and Congress gave a clear and valid legislative command that leaves no discretion in the bankruptcy court to modify the injunction. 287 B.R. at 550, 553. We determined that continuing an action to allow the WCAB to decide a reconsideration petition filed by the debtor would not violate § 524(a)(2) because it was not an action to "collect, recover or offset" a discharged debt as a personal liability of the debtor. *Id.* at 554-56. Resolution of the debtor's reconsideration petition was necessary to allow the prepetition award to become final and permit the creditors to seek payment from the UEF.

Central to our analysis was the effect of § 524(a)(1), which must be read *in pari materia* with § 524(a)(2). Section 524(a)(1) is "self-executing"—there is no need to trigger it as the majority claims—and it operates automatically to void any judgment, including a future judgment, to the extent it is a determination of the debtor's personal liability. *Id.*; *see also Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 181-82 (9th Cir. BAP 2021) ("The discharge voids all judgments at any time obtained—i.e., past, present, and future—to the extent that the judgment is a determination of the personal liability of the debtor with respect to a discharged debt." (cleaned up)); *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 171 (9th Cir. BAP 2005)  ("Once the discharge was entered . . . , any judgment that [the creditor] obtained on the discharged debt would

2

automatically be rendered 'void' by § 524(a)(1), and [the creditor] itself was subject to the discharge injunction imposed by § 524(a)(2). Thus, the . . . judgment obtained [post-discharge] was 'void' the instant it was entered.").

The majority asserts that "[not] every post-discharge judgment against a debtor [is] void under § 524(a)(1)," but where the debt was discharged, as in this case, the statute says otherwise. By definition, a judgment is a "determination of the rights and obligations of the parties" and a personal judgment "imposes personal liability on a defendant" and "may therefore be satisfied out of any of the defendant's property within judicial reach." *Judgment*, Black's Law Dictionary (12th ed. 2024). Section 524(a)(1) renders **any** post-discharge judgment against a debtor immediately void to the extent it is a determination of the personal liability of a discharged debt.

Sections 524(a)(1) and (a)(2) work in concert to prevent imposition of personal liability for discharged debts. Section 524(e) clarifies that non-debtors who are liable for the same debt are not protected by the discharge injunction. The statutory scheme allows creditors to take actions to enforce or recover from property of the debtor or from certain co-obligors.

In *Munoz*, allowing the WCAB to finalize a prepetition award as a procedural prerequisite to the UEF's liability was not violative of § 524(a)(2) because the award against the debtor was void upon discharge and ruling on the reconsideration petition could not be an act to enforce,

recover or offset the discharged debt as a personal liability of the debtor. Similarly, in *Beeney*, we held that continuing an action nominally against a discharged debtor did not violate § 524(a)(2) where recovery was limited to debtor's insurer and a direct action was not authorized under state law. 142 B.R. at 363. As discussed below, the state court has authorized Mrs. Porcel to proceed nominally against Debtor to recover insurance proceeds. I agree that she can proceed solely to recover insurance proceeds or to establish liability of third parties, but joint and several liability requires entry of judgment against Debtor as a personal liability—an action which is flatly violative of the discharge injunction.

But Mrs. Porcel does not seek authority to proceed nominally against Debtor to recover from her insurer or other third parties. She seeks authority to continue the state court litigation for the express purpose of obtaining a personal judgment against Debtor for the proportionate share of total damages caused by Debtor's fault. She cannot establish joint and several liability under state law without a valid personal judgment against Debtor.

**B.   Joint and several liability under Washington law**

Joint and several liability under RCW 4.22.070(1) requires judgment to be entered against more than one defendant. *Anderson*, 873 P.2d at 492. Parties held jointly and severally liable under RCW 4.22.070(1) are liable only for the sum of their proportionate shares of plaintiff's damages,

*Kottler*, 963 P.2d at 840, and they have a concomitant right of contribution against other joint tortfeasors, RCW 4.22.040.

Fault must be apportioned to every entity which caused the plaintiff's damages, including nonparties and entities who are immune, have defenses against the plaintiff, or have been released. RCW 4.22.070(1). But judgment cannot be entered against defendants who have been released, are immune from liability, or have prevailed on any other individual defense against the plaintiff. *Id.*

Mrs. Porcel effectively asks us to take her at her word that she will not seek to enforce the judgment against Debtor. She has not filed a settlement with Debtor to make her promise binding. Under RCW 4.22.060(1), "prior to entering into a release, covenant not to sue, covenant not to enforce judgment, or similar agreement" the parties must provide notice to other parties and the court, and the court must approve the agreement as reasonable.

If Mrs. Porcel were to file an agreement not to enforce judgment against Debtor, it would necessarily constitute a release under state law. "The plain meaning of 'release' is the 'surrender of a claim, which may be given for less than full consideration, or even gratuitously.'" *Barton*, 308 P.3d at 603. To determine whether a settlement constitutes a release, Washington courts look to the intent of the parties and consider whether the agreement is a complete resolution of all claims between the parties. *Id.* at 606-608. Because the discharge injunction precludes any recovery from

5

Debtor, including contribution claims,[1] such an agreement will constitute a complete resolution of claims against Debtor and will leave "no justiciable issue to be resolved between the parties." *Id.* at 606 (citing *Shelby v. Keck,*

---

[1] I assume that potential contribution claims would be barred by the discharge injunction, but it is not entirely clear whether a state court would agree. The right of contribution by a joint tortfeasor is predicated on payment of more than that defendant's share of liability. Because the contribution right arises by statute, only after payment of joint and several liability imposed by a post-discharge judgment in a case that was filed post-petition, it may be considered not to be within the fair contemplation of the parties, and thus, not subject to discharge and the discharge injunction. *See Picerne Constr. Corp. v. Castellino Villas (In re Castellino Villas)*, 836 F.3d 1028, 1034 (9th Cir. 2016) ("In determining whether a creditor's claim arose prepetition, we use the 'fair contemplation' test. Under this test, 'a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law.'" (quoting *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir. 2009)).

If contribution rights are not enjoined by Debtor's discharge, allowing Mrs. Porcel to proceed against Debtor to establish liability for a discharged debt is clearly violative of the discharge injunction because the lawsuit could result in personal liability to Debtor. Unlike *Munoz* and *Slali*, where we and the District Court reasoned that reimbursement liability to the UEF resulting from the UEF's payment of an unpaid judgment would be in the nature of a nondischargeable excise tax, and thus not subject to the discharge injunction, contribution claims are dischargeable in bankruptcy.

If contribution rights are enjoined, a covenant not to enforce judgment against Debtor must constitute a release because it leaves no justiciable issues related to Debtor. And while a covenant not to enforce judgment against a discharged Debtor is not a classic "Mary Carter" agreement, it does "realign the interests of the parties" in an "attempt to artificially manufacture joint and several liability between an individual and a deep-pocket institutional defendant" and affects the State's right to seek contribution. *See Barton*, 308 P.3d at 607-608; *Romero v. W. Valley Sch. Dist.*, 98 P.3d 96, 98-99 (Wash. App. 2004), *partially overruled* by *Barton*, 308 P.3d at 605; *Maguire v. Teuber*, 85 P.3d 939, 941 (Wash. App. 2004) *partially overruled* by *Barton*, 308 P.3d at 605 (citing Cornelius J. Peck, *Reading Tea Leaves: The Future of Negotiations for Tort Claimants Free from Fault*, 15 U. Puget Sound L. Rev. 335, 344 (1991-92); Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Destruction of Tort Reform*, 16 U. Puget Sound L. Rev. 1, 50 (1992-93)).

541 P.2d 365, 370 (Wash. 1975) (en banc)). Neither Mrs. Porcel nor any joint tortfeasor would have any remaining claims against Debtor. The agreement would evidence an intent to completely resolve all claims against Debtor and would operate as a release.

"Settling parties, released parties, and immune parties are not parties against whom judgment is entered and will not be jointly and severally liable under RCW 4.22.070(1)(b)." *Kottler*, 963 P.2d at 834; *see also Anderson* 873 P.2d at 491 n.2, 492 (noting that a defendant who received a bankruptcy discharge and who was "correctly" dismissed from the case "cannot under any reasonable interpretation of RCW 4.22.070(1)(b) be a defendant against whom judgment is entered."); *Doyle v. Mutual of Enumclaw Ins. Co. (In re Doyle)*, 966 P.2d 1279, 1281 (Wash. App. 1998) ("While the trier of fact may attribute fault to settling, released defendants, such defendants cannot have judgment entered against them within the meaning of RCW 4.22.070(1). Thus, released defendants are not jointly and severally liable." (citation omitted)).

Additionally, the Washington state court must conduct a hearing to consider the reasonableness of any settlement agreement, including a covenant not to enforce judgment, because the settling party is discharged from contribution liability. RCW 4.22.060(1). The "reasonableness hearing is held to determine the effect of an equitable distribution of payment among joint tortfeasors according to their liability." *Chausee v. Maryland Cas. Co.*, 803 P.2d 1339, 1343 (Wash. App. 1991). "When a defendant, by

7

virtue of a bankruptcy discharge, has a complete defense to personal liability, courts recognize the reasonableness of a settlement is open to question because the insured will have no incentive to minimize the settlement amount." *Wood v. Milionis Constr. Inc.*, 492 P.3d 813, 826 (Wash. 2021) (cleaned up). Thus, Washington courts have determined that it is "unreasonable" for defendants who have received a bankruptcy discharge "to settle for any amount in excess of the available policy limits." *Werlinger v. Warner*, 109 P.3d 22, 27 (Wash. App. 2005).

The state court has expressly authorized Mrs. Porcel to continue the case against Debtor "solely to recover [Debtor's] $50,000 of insurance proceeds." If she were to continue the litigation against Debtor with recovery limited to insurance proceeds, I would agree that doing so would not violate § 524(a)(2). But joint and several liability requires imposing a personal judgment against Debtor for the full amount of her proportionate share of damages.

Mrs. Porcel asks this Panel, under the guise of construing the discharge injunction, to cut a path through Washington's carefully crafted statutory scheme and permit her to collect a discharged debt from a deep-pocket defendant based on her unsworn and unverified statement that she will not enforce a personal judgment against Debtor. In essence, she wants permission to proceed against an effectively released defendant without the effect of actually releasing her.

If the Washington Legislature intended to allow discharged debts to form the basis for joint and several liability, it easily could have done so by creating an exception to the general rule requiring entry of judgment. And, if Congress intended to allow entry of a personal judgment for a discharged debt, so long as the plaintiff does not try to enforce it, it would not have made such judgments automatically void. I believe the bankruptcy court correctly held the lawsuit violates the discharge injunction. I would affirm with a modification allowing Mrs. Porcel to proceed against Debtor solely to recover insurance proceeds.